Joseph Adrey and Fadwa Adrey v. Commissioner.
Adrey v. Commissioner
Docket No. 56809.
United States Tax Court
T.C. Memo 1957-90; 1957 Tax Ct. Memo LEXIS 158; 16 T.C.M. (CCH) 379; T.C.M. (RIA) 57090; May 31, 1957
*158 W. L. Mims, Esq., Massey Building, Birmingham, Ala., for the petitioners. Lester R. Uretz, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioners for the taxable year 1948 in the amount of $5,532.02. Petitioners assign as error respondent's action in increasing net income in the amount of $13,800 as taxable dividends received from the Virginia Realty Company, Inc., and in decreasing the capital gain from the sale of the capital stock of such corporation in the taxable year 1948. By amended answer the respondent affirmatively alleges that in the event certain advances made by petitioners are determined not to be capital contributions the cost basis of the shares sold in 1948 should be adjusted accordingly. In their reply petitioners concede such adjustment is to be made. Findings of Fact The stipulated facts are found accordingly. Petitioners are husband and wife residing in Birmingham, Alabama. They filed their joint income tax return for 1948 with the collector of internal revenue for the district of Alabama. Virginia Realty Company, Inc., hereinafter referred to as *159 the corporation, was formed on April 29, 1944, under the laws of the state of Alabama, for the purpose of dealing in real estate activities. Its authorized capital stock consisted of 100 shares of common stock of the par value of $20 per share. The stock was issued as follows: Fadwa Adrey, 50 shares; John Hamilton Perkins, 49 shares; and 1 share to J. H. Garrett. Subsequently, Perkins acquired the one qualifying share from Garrett. At the time of the organization of the corporation, petitioner, Joseph Adrey, and Perkins each paid the sum of $3,750 to the corporation. Upon the receipt of the $7,500, the amount of $2,000 was credited by the corporation to its capital stock account and the remaining $5,500 was credited to an account designated "Capital Surplus Account." In 1944, 1945, and 1946, Perkins and Joseph Adrey each advanced equal amounts to the corporation which sums were credited on the corporate records to its capital surplus account. In 1947 and 1948, the corporation paid certain amounts to Joseph Adrey and to Perkins, and charged such payments to the capital surplus account. A transcript of the capital account as it appears on the corporation's books discloses entries *160 as follows: Charged to
Credited to
Capital Surplus
Capital Surplus
Petitioner
Perkins
Petitioner
Perkins
Received by corporation
from individuals: 5-20-44
$ 2,750.00
$2,750.00
12-17-45
$ 725.00
4-26-46
$ 725.00
6-19-46
$2,500.00
2,500.00
12-18-46
7,199.08
7,199.08
Totals, 1946
$9,699.08
$10,424.08
Received by individuals
from corporation: 3-14-47
$ 1,500.00
$1,500.00
5- 7-47
1,250.00
1,250.00
10-30-47
1,500.00
1,500.00
Totals, 1947
$ 4,250.00
$4,250.00
3-17-48
$ 3,000.00
$1,500.00
5-31-48
1,500.00
6-30-48
2,200.00
7-31-48
6,600.00
9-30-48
5,250.00
1,750.00
10-14-48
1,200.00
400.00
11-27-48
3,750.00
1,250.00
Totals, 1948
$21,300.00
$7,100.00
The officers of the corporation were Joseph Adrey, president, Fadwa Adrey, vice-president, and John Hamilton Perkins, secretary and treasurer. Fadwa took no active part in the affairs of the corporation. Joseph Adrey owned and operated, as sole proprietor, a restaurant in Birmingham, Alabama, known as Joe's Steak House. Perkins was the sole stockholder and operator of J. H. Perkins Company, a corporation, engaged *161 in the real estate and insurance business. The operation and management of the Virginia Realty Company, Inc., were left primarily to Perkins. The business was carried on and the corporate records were kept in the office of the J. H. Perkins Company. The sums which Joseph Adrey paid to the corporation in 1946 were paid by his personal check. He designated such payments on his check book stubs as "loans." The cancelled checks were previously destroyed by a fire and were not available. No notes were given by the corporation to either Adrey or Perkins evidencing its indebtedness to them; no interest was paid thereon; and no certain time was fixed for the repayment of the alleged loans. Petitioners received the amount of $21,300 from the corporation in the taxable year 1948, no part of which was reported on their joint return for that year. In the year 1947, petitioners received the sum of $4,250 from the corporation which was charged to them in the capital surplus account. Earned surplus of the corporation as of May 31, 1947 and May 31, 1948, was in the respective amounts of $15,391.01 and $31,157.52. On October 30, 1948, an amount of $10,000 was credited to the corporation's *162 capital surplus account which was designated "Sale of Virginia Realty, Inc." In determining the deficiency the respondent increased net income by the amount of $13,800 as taxable dividends received from the Virginia Realty Company, Inc., in 1948. In adjusting long-term capital gain he treated the amount of $10,424.08 as an addition to the cost of the original 50 shares of capital stock of the corporation which amount was reduced by the payment of $4,250 received by petitioners in 1947. The latter adjustments resulted in a decrease of capital gain to be taken into account in the amount of $1,789.86. During the years 1944, 1945, and 1946, petitioners loaned to the Virginia Realty Company, Inc., the amount of $13,174.08. In the taxable year 1948, the corporation was indebted to the petitioners on account of loans made to it in prior years in the amount of $8,924.08. Petitioners, in the taxable year 1948, received taxable dividends from the Virginia Realty Company, Inc., to the extent of the difference between the sum of $21,300 received in 1948, and the amount of the corporation's indebtedness to them of $8,924.08, or $12,375.92. Opinion LeMIRE, Judge: The question for decision *163 is whether certain funds paid to the Virginia Realty Company, Inc., were loans, as contended by petitioners, or were contributions to capital as determined by the respondent. The issue is one of fact to be determined on the basis of the particular facts presented. , affd. , certiorari denied . There is some variance in the amount of the advances claimed to have been made by petitioners and the amount received by the corporation, as shown on its books. The record establishes that the sum of $1,000 was paid for the 50 shares of the capital stock which were issued in the name of Fadwa Adrey. It further shows that sums aggregating $13,127.08 were advanced by petitioners which were credited to capital surplus on the corporate books. We accept the figure of $13,127.08 as the amount paid into the corporation either as loans or contributions to capital. The witness, Perkins, testified that the bookkeeper had erroneously credited the advances to capital surplus. The bookkeeper was not called as a witness. Petitioner, Joseph Adrey, and Perkins both testified that the equal advances which *164 they made to the corporation were intended to be loans and not contributions to capital. Adrey's testimony was corroborated by entries shown on the stubs of his check books indicating that the payments were loans. Furthermore, the witness, Norman Williams, a certified public accountant, employed in connection with Adrey's restaurant business, testified that the books of that business disclosed the receipt of the amount of $4,250 from the Virginia Realty Company, Inc., which amount was recorded as repayment of loans. There was no testimony to the contrary, and the only inconsistency appearing in the record is the evidence of the recording of the advances as credits to capital surplus, which we do not regard as conclusive. In the light of the entire record, we have found as a fact that in the years 1944, 1945, and 1946, petitioners loaned to the corporation sums aggregating $13,127.08. In 1947, the corporation repaid to petitioners the amount of $4,250, so that the unpaid balance of the corporation's indebtedness to them on account of loans was $8,924.08. In the taxable year 1948, petitioners received from the corporation payments aggregating $21,300. The difference between that amount *165 and the remaining indebtedness of $8,924.08, or $12,375.92, constitutes a distribution of taxable dividends in that year. The conceded required adjustment to the cost basis of the 50 original shares of the capital stock of the Virginia Realty Company, Inc., sold by petitioners in 1948, will be given effect in the recomputation under the rule. Decision will be entered under Rule 50.